IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **FRANCES PUNZO,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| v. | : | **NO. 20-5581** |
| **SUGARHOUSE CASINO,** | : | |
| *Defendant.* | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                            **January 5, 2022**

Currently before me is Plaintiff's Motion for an adverse inference regarding discovery requested and not produced. For the reasons set forth below, I will deny Plaintiff's Motion.

**I.     FACTUAL BACKGROUND**

**A.   General Background**

This case arises out of Plaintiff Frances Punzo's claim that he was subject to age and national origin discrimination when auditioning to be a Table Games Dealer at Defendant Sugarhouse Casino. The Complaint alleges that, in September 2019, Plaintiff auditioned for the position of Table Games Dealer, but Defendant declined to offer him employment, maintaining that Plaintiff had not performed well in the audition process. (Compl. ¶ 1.)

On November 9, 2020, following the Equal Employment Opportunity Commission's issuance of a Notice of Right to Sue, Plaintiff filed the current Complaint setting forth claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Age Discrimination and Employment Act. Plaintiff alleges that, due to his national origin and age, he was subjected to disparate treatment with regards to his auditions as compared to other students in Defendant's Dealer School.

B.     **Background of Current Dispute**

On February 2, 2021, Plaintiff served Defendant with Interrogatories and Requests for the Production of Documents. Defendant provided Responses and Objections on March 19, 2021 and supplemented those responses on three additional dates. Included among Defendant's discovery responses was a blank Dealer Audition Scoring Sheet labeled "Dealer Auditions from Sugarhouse Casino." During Plaintiff's deposition, Plaintiff's counsel inquired about the Dealer Audition Scoring Sheet (the "Audition Form") and informed Defendant's counsel that Plaintiff's specific Audition Form had not been produced. Defendant's counsel advised that his client did not retain any records of evaluation/audition scores.

Plaintiff then sent a supplemental document request seeking Defendant's document retention policy regarding student auditions, audition notes, audition materials, audition evaluations, audition scoring and/or audition documentation which existed from August 1, 2019 through December 31, 2019. During a subsequent phone call between counsel, Defendant's counsel advised that Defendant had no written policy regarding retention of Audition Forms. In response, Plaintiff's counsel served a Deficiency Notice requesting the Audition Form for Plaintiff and Defendant's written policy regarding student audition, audition notes, audition materials, audition evaluations, audition scoring, and or audition document, which existed from August 1, 2019 through December 31, 2019. The Deficiency Notice also included a request for the Audition Forms for the other individuals enrolled in Plaintiff's class. Defendant responded to the Deficiency Notice on September 14, 2021, again advising Plaintiff (a) that any Audition Form for Plaintiff was not retained and (b) that Defendant had no written retention policy for audition evaluations or notes. Defendant also indicated that the Audition Forms of the other individuals in Plaintiff's Dealer School class were not retained.

On September 14, 2021, Plaintiff filed a Motion to Compel or, alternatively, for an adverse inference that the destroyed evidence would have been favorable to Plaintiff's claims. I issued an Order directing Defendant to either (a) provide a signed and sworn affidavit attesting to the fact that there were

no written audition forms used for Plaintiff's audition or (b) show cause as to why Plaintiff was not entitled to an adverse inference based on Defendant's failure to retain those records.

### C. Facts Regarding the Use of the Audition Sheets

In support of its Response to the Order to Show Cause, Defendant has produced the affidavit of Kevin Gargin, the Casino's Table Games Manager. (Def.'s Response to Order to Show Cause, Ex. A, Decl. of Kevin Gargin ("Gargin Decl.") ¶ 1.) Mr. Gargin explained that:

- Defendant Casino offers a free school (the "Dealer School") for individuals interested in becoming a table games dealer. Individuals apply to be admitted into the Dealer School and have to attend and pass an initial interview. (Id. ¶¶ 3,4.)

- Dealer School runs for six weeks, and halfway through, those individuals still enrolled are given an audition to determine if they could perform the role of a table games dealer. If an individual passes the audition, they return to Dealer School and finish the program. If the individual then completes Dealer School, they are typically, although not always, hired as a dealer. (Id. ¶¶ 6–8.)

- If an individual does not pass the first audition, they are given a second audition. If they pass the second audition, they complete Dealer School. If they do not pass the second audition, they are removed from Dealer School and encouraged to reapply within six months. Sometimes, the Defendant will consider the individual for a different position in the casino. (Id. ¶¶ 9–11.)

- During auditions, students are assessed on dealing procedure, shuffle skill, and proper payouts. They are asked to deal a blackjack game, and, as in the actual casino environment, students face different scenarios. If the evaluator feels the student is nervous or not performing well, the evaluator might allow the individual to deal additional hands. The audition is pass/fail and students are verbally informed of their result. (Id. ¶¶ 13–16.)

- To assist the evaluator, the Casino uses an Audition Form, which is a physical piece of paper on which the evaluator takes notes. These forms are not filled out or scanned in electronically, and the evaluator is not required to write down any specific information, but rather remains free to write down notes as they see fit and then circle pass or fail. After the auditions, the forms are gathered and submitted to the Hiring Manager, who disposes of them. (Id. ¶¶ 17–22.)

Defendant also submitted the Declaration of Maritza Lewis, a Table Games Dual-Role Shift Manager for Defendant. (Def.'s Resp. to Order to Show Cause, Ex. B, Decl. of Martiza Lewis ("Lewis Decl.")). Ms. Lewis states that:

- She along with Howard Holden conducted auditions. She was the individual who conducted Plaintiff's first audition. (Id. ¶¶ 5–6.)

- Plaintiff failed his first and second auditions.  Even though third auditions are not usually given, Plaintiff was given a third audition by the former Director of Table Games, Bob Little.  He failed that as well.  (Id. ¶¶ 7–10.)

- Up through and including the time that Plaintiff was enrolled in Dealer School, Ms. Lewis took notes on an Audition Form.  The purpose of her doing so was to be able to properly inform the student of how well he/she had performed and what areas he/she could improve upon.  The detail and number of notes taken depended upon the performance of the student she was auditioning.  If the student performed particularly well or particularly poorly in one area, she would note that on the form. There were instances, however, where the only marking she made on the form was to circle that the student passed the audition.  (Id. ¶¶ 14–19.)

- Ms. Lewis was never informed that there was a specific requirement as to how detailed the notes on the Audition Form needed to be.  Moreover, when taking notes, Ms. Lewis did not write down the number of hands that a student had dealt.  (Id. ¶¶ 19–20.)

## II.     LEGAL DISCUSSION

Plaintiff seeks a spoliation inference based on Defendant's inability to produce the Audition Forms in discovery.  The spoliation inference is an inference that permits the jury to assume that destroyed evidence would have been unfavorable to the position of the offending party.  Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994).  In order to obtain a spoliation inference, a moving party must establish actual spoliation, which concerns situations where a party has altered, destroyed, or failed to produce evidence relevant to an issue in a case.  Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).  "Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and [4] the duty to preserve the evidence was reasonably foreseeable to the party. Id.

While Defendant concedes that it had Audition Forms and thus was in control of those Forms (element one), it disputes the remaining elements necessary for a finding of spoliation.

### A.     Relevance of the Evidence

In support of the second element, Plaintiff contends that the Audition Forms were created during the course of Plaintiff's and Plaintiff's classmates' auditions and could reflect the contemporaneous thoughts and observations of the evaluator when deciding whether an individual passed or failed the

4

audition. Specifically he asserts that the destroyed Audition Forms would speak to: (1) the testing/audition conditions to which each student was subjected; (2) the number of hands each student was required to deal (3) the number of times each student was required to shuffle; (4) whether, in fact, the scoring of the audition was consistent with the failing/passing result which was communicated to the student; (5) whether the scoring was uniformly administered; (6) the specific areas tested during the audition; (7) whether "stray marks were created by the evaluator exhibiting bias/animus; and/or (8) whether Plaintiff, in fact, failed the audition.

Defendant responds that it is speculative to assume the Audition Forms would be relevant to Plaintiff's discrimination claims because the amount of information on them would vary depending on the individual student and the person conducting the audition. Indeed, Plaintiff testified at his deposition that, after his first audition, his evaluator did not write anything down and simply gave him a blank piece of paper that said he needed more practice and that he failed. (Def.'s Resp. Order to Show Cause, Ex. D, Dep. of Frances Punzo ("Punzo Dep."), 82–83.)

I find that these Audition Forms, to the extent they contain any information or notes about the various auditions, could be relevant to the claims or defenses in this case. Defendant's responses to written discovery have indicated that the evaluators may not be able recall many of the details of the auditions they administered. (Pl.'s Reply, Ex. G, at Interrogatory No. 15.) Accordingly, the Audition Forms might serve to refresh the evaluators' recollections and provide additional information about the relevant auditions. And, in turn, this information could be relevant to show discriminatory treatment.

Nonetheless, Plaintiff ascribes too much importance to these Audition Forms. According to the Declarations set forth above, there is no indication that the Audition Forms ever contained the detail that Plaintiff seeks. Indeed, the evaluators did not need to write down number of hands or details of the audition. Rather, they were free to scribble down whatever notes they deemed appropriate and then circle either pass or fail. Thus, while the Audition Forms may be relevant to the claims here, they are not necessarily as crucial as Plaintiff claims.

### B. **Whether There Has Been Actual Suppression or Withholding of the Evidence**

As to element three, Defendant concedes that it did not retain the Audition Forms. It asserts, however, that the forms were not willfully suppressed or withheld and it did not have an obligation to preserve the audition forms.

As noted in my Order to Show Cause, in cases of actions under Title VII and the ADA, the EEOC has dictated that "[a]ny personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later." 29 C.F.R. § 1602.14; see also 29 C.F.R. § 1627.3(b)(1) ("Every employer, who, in the regular course of his business, makes, obtains, or uses, any personnel or employment records related to [job applications] . . . shall . . . keep them for a period of 1 year from the date of the personnel action to which any records relate" including any "employment test considered by the employer in connection with any personnel action").

These regulations are not conclusive here. As a primary matter, courts have held that "the records-retention regulation is ambiguous and subject to various interpretations." Martincic v. Urban Redevelopment Auth. of Pittsburgh, 844 F. Supp. 1073, 1076 (W.D. Pa. 1994). Given this ambiguity, and upon consideration of the supplemental declarations submitted by Defendant, I cannot find with certainty that Defendant's duties under these regulations were triggered. The Audition Forms were not "ma[de], obtain[ed], or use[d]" by Defendant related to a job application. Instead, the application occurred when the student sought entry into the Dealer School. The auditions were designed only to test whether an applicant could remain in Dealer School, and the Audition Forms were used as notetaking devices for the evaluator. Even if a student passed all of his/her auditions, he or she still had to complete Dealer School and, even then, was not guaranteed a position as a dealer. The Audition Form also does

6

not clearly qualify as a "test paper" under 29 C.F.R. 1627.3(b)(1)(iv), since that section specifically refers to "[t]est papers *completed by applicants*." Id. (emphasis added). The Audition Forms here were used by the evaluators and not completed by the applicants.

Moreover, "[a]lthough a regulation may supply the duty to preserve records, a party seeking to benefit from an inference of spoliation must still make out the other usual elements of a spoliation claim," and a mere violation of this regulation does not necessarily entitle another party to an adverse inference. Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 94 (D.N.J. 2007), aff'd, 285 F. App'x 905 (3d Cir. 2008). Therefore, it is unclear, at best, whether Defendant had an obligation to retain Plaintiff's Audition Forms.

Finally, the Third Circuit has emphasized that "a finding of bad faith is pivotal to a spoliation determination" and that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 79 (3d Cir. 2012) (quotation omitted). In other words, "destruction that occurs as a result of inadvertence, routine practice, or accident is not spoliation at all." Bozic v. City of Washington, Pa., 912 F. Supp. 2d 257, 269 (W.D. Pa. 2012) (citing Bull); see also Sarmiento, 513 F. Supp. 2d at 94 (declining to impose spoliation sanctions where defendant presented evidence that interview notes were routinely destroyed and, in the present case, were destroyed promptly after the decision-making meeting, which was well before the plaintiff filed his EEOC complaint).

Plaintiff has produced no evidence that the interview notes were deliberately destroyed with an intent to withhold information. According to Defendant, the Audition Forms are not electronically maintained and are routinely gathered and submitted to the Hiring Manager who then disposes of them after the audition. (Gargin Decl. ¶¶ 21–22.) As such, the lack of "bad faith" evidence does not favor a spoliation inference.

### C. **Whether the Duty to Preserve the Evidence Was Reasonably Foreseeable**

As to the fourth and final element, Plaintiff presses that Defendant's duty to preserve the evidence was reasonably foreseeable to Defendant. He contends that he auditioned three times—September 25, 2019, September 26, 2019, and September 27, 2019—and after each audition, he complained that (a) the auditions among his classmates had disparities and (b) he was disparately treated. As such, Plaintiff asserts that Defendant should have reasonably foreseen litigation and preserved the Audition Forms. Defendant counters that it did not have notice of Plaintiff's claims of discrimination until after the Audition Forms were destroyed.

On the issue of foreseeability, the analogous case of Thompson v. Bridgeton Bd. of Educ., 9 F. Supp. 3d 446 (D.N.J. 2014) is instructive. In that matter, the plaintiff had been hired as an education enforcement officer with the defendant school district until his position was abolished due to a reduction in force. Id. at 450. Over a year later, the defendant publicly advertised two vacancies for identical positions, and plaintiff reached out to his supervisor about his eligibility. The supervisor advised plaintiff that he would have to reapply and interview for the position. Id. During his interview, members of the interview committee took notes on their impression of the applicants' answers to the questions and assigned a numerical score to each response. Id. At the conclusion, members of the committee tallied their scores and gave their sheets to plaintiff's former supervisor. Id. When Plaintiff was not offered a position, he brought a claim for reverse racial discrimination. Id. at 451. During discovery, the defendant revealed that it had lost the original score sheets and interviewer notes, and that the committee members did not recall the exact scores assigned to each candidate. Id. at 450. Plaintiff sought sanctions on grounds of spoliation of the lost notes and score sheets. Id. at 451.

Considering whether the duty to preserve the evidence was reasonably foreseeable, the court declined to impose spoliation sanctions Although the plaintiff alleged that he wrote a letter to defendants raising issues of discrimination shortly after the hiring decision, the district court disagreed, noting that

plaintiff's letter did not raise "issues of discrimination," but rather outlined his belief that he should have been given preference for the position since he had been previously let go pursuant to a reduction-in-force. Id. at 453. As such, the duty to preserve evidence did not become reasonably foreseeable until the defendant's receipt of the plaintiff's EEOC charge. Id. at 453. Ultimately, the court found that while defendants were at fault for not being able to locate the notes, plaintiff presented no evidence that defendants intentionally destroyed the notes or that defendant had a duty to preserve the notes prior to the receipt of the EEOC charge. Id. at 453. It further concluded that the plaintiff was not seriously prejudiced by the lack of interview notes since he deposed the interviewers, all of whom agreed that, while they could not recall details, plaintiff had not interviewed well. Id. at 453–54.

Similarly here, I find that Defendant's duty to preserve these notes did not arise until at least early October 2019, after the conclusion of his three auditions and the destruction of the Audition Forms. After Plaintiff failed his first audition, he purportedly lodged an oral complaint that the program was "inconsistent and unfair" in that other students who made mistakes passed, but he did not. (Pl.'s Reply, Ex. B, e-mail of 9/26/19.) But he did not complain of discrimination. (Id.) Plaintiff failed his second audition the next day, after which he sent an email to Jim King in Human Resources, indicating that he had "serious issues with process out of class of 10 I'm only one who failed but I know game inside out also today my audition was longer than other two people they only dealt 3 hands I dealt 8." (Id. at e-mail of 9/25/19.)

Thereafter, Plaintiff failed his third audition and was removed from Dealer School. That day, he sent an email to the Head of Table Games, Bob Little:

> Mr. Little I appreciate you taking time today to sit in on the audition and apologize you were brought into the situation. I am a finance major and Corporate person who was injured in 2012 and was cleared to get back in workforce. I really needed a position like everyone else and to your disliking there are many inconsistent and unfair problems with the program. During my first audition I was last person to audition so I hear everyone come out and sherry told them the mistakes who miscounted paid out wrong pays forgot to deal card had black jack and didn't look and many other major errors yet they passed these same people with

9

> Howard in class watching overpaid our teacher large sums of money had poor card placement ect yet they passed.
>
> My second audition I dealt 9 hands had to shuffle and had every scenario and the reasons I failed that audition I actually correct every mistake in this one. But in that second audition the other two people on the ropes to pass walked in didn't have to shuffle no one bought in they just dealt 3 hand and that's it. Their audition was another standard. How do I know this is that my whole class looked up to me cause as Sherry said and as she said again tonight Frank you know the game inside out these kids don't yet I'm out of the program. Out of 10 students 4 had relatives working at sugarhouse as dealers, who gave massages to the teacher ect yet I'm on the outside. That whole process and how I was treated was very unprofessional I was discriminated and made a spectacle of. If you sat in on all their auditions no one would make it through. Sorry for being so long. I agree with you if I had another couple weeks I could clean it up but they didn't give me a chance because I exposed their problems.

(Id. at email of 9/26/19.)

Plaintiff sent another email to Jim King on September 27, 2019, stating:

> I was made a spectacle yesterday. I had audition on Wed 3 of us had to re audition my audition was 7 hands in front of marissa and Bruce. They call me in deliberate call me in again say I failed and said Howard would have to make decision on Thursday when he returns. Other students in class look up to me I helped them understand game even sherry said "you know game these kids don't." So next person Roman comes out of his audition and tells me he made some mistakes had to deal 3 hands didn't have to shuffle only marissa was there and she didn't buy in he just dealt 3 hands. The auditions have different standards for different people.
>
> So yesterday I walk in and instead of bing [sic] professional calling me to an office in middle of cafeteria Howard says we are giving you another audition today because you felt your audition was not right.
>
> I walk in room and its Howard Bruce Sherry at table as customers and Mr. Little as sort of a pit boss overseeing my audition. He says will you accept what is said at this audition what am I gonna say no?
>
> So I deal hands around 5 and he makes his critique make long story short asks what week are we in school sherry says 4 he says I don't feel he is ready yet maybe he can go another week in other class ect so he leaves and Bruce Howard and sherry make me leave room to talk about it.
>
> Howard comes out and says since you didn't pass we got to drop you out of program and he beings to walk away and I ask him can I say something

10

> and we start not arguing but disagreeing about how was that fair it was more pressure 3 people and director so I left.
>
> Look Jim I managed people for years at Sunoco Wachovia and US Bank I am very experienced with HR and hiring issues quotas ect. Bottom line is product that passed need a lot of work some more than me but passed for diff reasons they all went though my audition no one would pass.

(Id. at e-mail of 9/27/19.)

Notably, throughout these emails, the only discrimination about which Defendant complains is based on nepotism, *i.e.*, students with relatives working at Sugarhouse Casino were given more favorable treatment. Such a claim is neither actionable under Title VII nor a basis for Plaintiff's Complaint. Indeed, at his deposition, Plaintiff admitted that he never complained about discrimination on any basis prior to leaving Dealer School. (Def.'s Resp. to Order to Show Cause, Ex. F, Punzo Dep., 110:2–111:13.)

The first time that Plaintiff conceivably raised racial or age-based discrimination was in an October 4, 2019 email to Jim King, wherein he stated:

> Jim hope your well. Today I received a call from Howard. He said it was his assessment that I am not the right person to work anywhere at sugarhouse because of my attitude wit situation with audition. You can check my resume I am a corporate management employee of over 30 yrs he is very unprofessional. I passed your basic sugarhouse interview then second interview. Because I brought to light that process they have has issues with nepotism age and ethnic problems he black balls me from getting a position. You and Michael are very professional and great people persons. I came to you after first audition before I even had blowout with Howard for something else in company. He is discriminating against me and personally using me as an example. I'm bumping this up the corporate ladder on him and looking into getting an attorney involved I have statement emails from 6 fellow students saying I was messed with and were witness to it Howard should have just calmed down and had no right calling me today and labeling me like he did.

(Pl.'s Resp., Ex. C.)

Thus, the first notice Defendant had of Plaintiff's age and ethnicity-based discrimination claims was, at best, upon receipt of this October 4, 2019 e-mail, which was a week past his last audition. As in

11

Thompson, Plaintiff has presented no evidence that Defendant had a duty to preserve the notes prior to the receipt of this email.

### D. Prejudice to Plaintiff

Finally, even if there was spoliation, Plaintiff has failed to establish sufficient prejudice to entitle him to the sanction of an adverse inference. See Schmid, 13 F.3d at 79 (holding that in determining whether a sanction is appropriate, the court should consider, among other things, "the degree of prejudice suffered by the opposing party.")

Here, Defendant has provided Plaintiff with the names of the individuals involved in Plaintiff's audition process. Although Plaintiff has had the opportunity over the course of discovery to depose these persons, he has apparently not done so. See Thompson, 9 F. Supp. 3d at 454 (finding lack of serious prejudice from lost interview notes since plaintiff could depose the interviewers); McCadden v. Nat'l R.R. Passenger Corp., No. 01-cv-4286, 2002 WL 32342483, at *7 (E.D. Pa. Oct. 29, 2002) (denying spoliation inference in part where plaintiff had the opportunity to depose interviewers and test their veracity during depositions). Having failed to take advantage of another method of obtaining the necessary information, Plaintiff cannot now complain that his case is prejudiced by the absence of the records.

### III. CONCLUSION

In light of the foregoing, I will deny Plaintiff's request for an adverse inference. An appropriate order follows.